## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DOSKOCIL MANUFACTURING** | § | |
| **COMPANY, INC. d/b/a PETMATE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-01098-B** |
| | § | |
| **MAKE IDEAS, LLC and** | § | |
| **KEITH MULLIN,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## PARTIAL MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.     SUMMARY ............................................................................................ 1
II.    INTRODUCTION.................................................................................. 1
III.   BACKGROUND .................................................................................... 2
IV.    LEGAL STANDARD ............................................................................ 6
V.     PETMATE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ................... 6
       A.   PETMATE OWNS ITS TRADEMARKS (PETMATE COUNT 2 & MULLIN
            COUNT 5) .............................................................................. 6
       B.   MULLIN IS NOT A JOINT INVENTOR OF PETMATE'S PATENTS (PETMATE
            COUNT 5 & MULLIN COUNT 4) ..................................................... 7
       C.   UNDER THE LICENSE AGREEMENT, PETMATE IS THE OWNER OF ITS
            DESIGN PATENTS (PETMATE COUNT 3 & MULLIN COUNT 6) ........................ 12
       D.   UNDER THE LICENSE AGREEMENT, PETMATE IS THE OWNER OF ITS
            UTILITY PATENTS (PETMATE COUNT 3 & MULLIN COUNT 6) ........................ 13
       E.   PETMATE HAS NOT INFRINGED MULLIN'S COPYRIGHTS (MULLIN
            COUNT 3) ............................................................................. 14
            1.   If the Book is a Valid Copyright, then Petmate has
                 Ownership Rights as a Joint Author ............................... 15
            2.   The License Agreement Grants Petmate Ownership of Any
                 Copyright Created During the Term and a Perpetual
                 License to Any Copyright Owned by Defendants ...................... 16
            3.   Copyright Protection is Not Available for Individual
                 Slogans ................................................................... 17
            4.   Copyright Protection is Not Available for Methods of Use.......... 19
       F.   PETMATE HAS NOT BREACHED THE LICENSE AGREEMENT FOR SELLING
            PRODUCT EXTENSIONS (MULLIN COUNT 1) ...................................... 20
       G.   DEFENDANTS ARE NOT ENTITLED TO PATENT DAMAGES ................................ 21
VI.    CONCLUSION ....................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 248-49 (1986) ......................................................................6

*Baker v. Selden*,
  101 U.S. 99, 100, 102 (1879)...........................................................19, 20

*Bencich v. Hoffman*,
  84 F.Supp.2d 1053, 1055 (D. Ariz. 2000) .............................................15

*Caterpillar Inc. v. Sturman Industries, Inc.*,
  387 F.3d 1358, 1377 (Fed. Cir. 2004)......................................................7

*Childress v. Taylor*,
  945 F.2d 500, 505 (2d Cir. 1991).............................................................15

*Diplomatic Man, Inc. v. Brown*,
  2006 WL 2434933 (S.D.N.Y. 2006).........................................................15

*Eli Lilly and Co. v. Aradigm Corp.*,
  376 F.3d 1352, 1359 ...................................................................................11

*Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC*,
  879 F.3d 1332, 1349 (Fed. Cir. 2018)......................................................21

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
  499 U.S. 340, 345 (1991)............................................................................15

*Fina Oil & Chem Co. v. Ewen*,
  123 F.3d 1466, 1472 (Fed. Cir. 1997).......................................................6

*Garrett Corp. v. U.S.*,
  190 Ct. Cl. 858, 870 (1970) ......................................................................12

*Hartco Engineering, Inc. v. Wang's Intern, Inc.*,
  142 Fed. Appx 455, 458 (Fed. Cir. 2005) ................................................9

*In re Bressman*,
  327 F.3d 229, 238 (Fed. Cir. 2003)...........................................................6

*Linear Technology Corp. v. Impala Linear Corp.*,
  379 F.3d 1311, 1327 (Fed. Cir. 2004).......................................................7

*Levin v. Septodont, Inc.*,
    34 Fed. Appx. 65, 72-73 (4th Cir. 2001) ................................................................12

*Member.com LLC v. Barber*,
    2013 WL 5348546, *8 (E.D.N.Y. Sept. 23, 2013) ....................................................15

*Motor Vehicle Bd. Of Tex. Dept. of Transp. v. El Paso Independent Auto. Dealers Ass'n, Inc.*,
    1 S.W.3d 108, 110-111 (Tex. 1999) .........................................................................21

*Natron Corp. v. Schukra U.S.A. Inc.*,
    558 F.3d 1352, 1356 (Fed. Cir. 2009)........................................................................7

*Netscape Communications Corp. v. ValueClick, Inc.*,
    684 F.Supp.2d 699, 721 (E.D. Va. 2010) .................................................................12

*R. Ready Productions, Inc. v. Cantrell*,
    85 F.Supp.2d 672, 686-687, 696 (S.D. Tex. 2000).............................................17, 19

*Vanderbilt University v. ICOS Corp.*,
    376 F.3d 1352, 1359 ................................................................................................9

*Williams v. ARC Music Corp.*,
    121 F.3d 720 (9th Cir. 1997) ...................................................................................15

*Willsea v. Theis*,
    1999 WL 595629, *9 (S.D.N.Y. Aug. 6, 1999)..........................................................15

*Wexler v. Hasbro, Inc.*,
    2022 WL 743431 (S.D.N.Y. March 11, 2022) .............................................................2

**Rules**

37 C.F.R. § 202.1(a)................................................................................................17

37 C.F.R. § 202.1(b) ...............................................................................................19

Fed. R. Civ. P. 56(a) .................................................................................................6

TO THE HONORABLE COURT:

Plaintiff Doskocil Manufacturing Company, Inc. d/b/a Petmate ("Petmate") offers the following argument and authorities in support of its partial motion for summary judgment against Defendants Make Ideas, LLC and Keith Mullin (collectively "Mullin").

## I.     SUMMARY

Petmate requests that the court grant summary judgment in its favor on the following issues, each of which is summarized below.

1. Trademark Ownership: Petmate is the owner of U.S. Trademark Nos. 5,351,758, 90521385, 90521344, 90327551, 90327546 and 90327534 that each do not include the words "Breathe" and "Right".

2. Joint Inventorship: Mullin is not a joint inventor of U.S. Patent Nos. D869,105, D870,986 and D930,289 because he did not collaborate with their inventors.

3. Design Patent Ownership: Petmate is the owner of U.S. Design Patent Nos. D869,105, D870,986, D930,289 and D930,288 that were independently created without Mullin.

4. Manufacturing Patent Ownership: Petmate is the owner of U.S. Patent Nos. 9,962,864 and 10,919,185 because they predate the License Agreement and were independently created without Mullin.

5. Copyright Infringement: Petmate does not infringe a copyright "book" that is a compilation of marketing slogans because the work is not copyrightable; and further, even if it were copyrightable Petmate would have ownership rights.

6. Breach of Contract for Selling "Unlicensed" Products: Mullin is precluded from claiming that Petmate sold unlicensed products because he accepted royalty payments for years for the sale of those same products.

7. Patent Infringement Damages: Mullin has not pleaded a claim for patent infringement, and therefore cannot recover damages for patent infringement.

## II.     INTRODUCTION

This lawsuit involves a dispute as to the ownership of intellectual property under a license agreement.  Defendant Keith Mullin is the sole employee of Defendant Make Ideas, LLC and claims ownership of Petmate's intellectual property as leverage against Petmate to extract royalty

1

payments for a license agreement he terminated.  Petmate filed this lawsuit to clarify its rights and prevent Mullin from harassing its customers.

The parties entered into a License Agreement in 2016 ("the License Agreement", Ex. A, APP 001), under which Petmate paid Mullin a 2% royalty to use his registered trademark, "Breathe Right", on products that Petmate designed and manufactured using its own technology developed before the Mullin relationship.  When the term of the License Agreement neared expiration in December 2020, Petmate offered to renew the agreement so that it could keep selling its products using the "Breathe Right" name.

Mullin sought a higher royalty rate to renew the license.  But rather than negotiate in good faith, he upped the ante by antagonizing and threatening Petmate's business relationships and reputation and by making false claims to Petmate's intellectual property.  Mullin got his wish by provoking Petmate to file this lawsuit.

The court may grant partial summary judgment for the issues in this case because they are not supported by fact or law.

## III.    BACKGROUND

Prior to executing the License Agreement, Mullin approached Petmate with a proposal for marketing a toy ball with holes, branded under the name "Breathe Right" and touted as "breathable" when carried in a dog's mouth.  Petmate was not initially interested because a ball with breathable holes was not a new idea.  *See, e.g., Wexler v. Hasbro, Inc.*, 2022 WL 743431 (S.D.N.Y. March 11, 2022) (no royalties owed for idea that is not novel).  In fact, Petmate already sold balls with holes under its "JW Holee Roller" brand and owned patents covering those products and their methods of manufacturing.  Several of Petmate's preexisting balls are shown below (*see* Ex. B, APP 051, 2014 catalog; Exs. C-E, APP 055, 059, 064, corresponding patents filed 2001-

2003).



Examples of Petmate's JW Holee Roller Products Predating the License Agreement (Exs. B-E)

Petmate reconsidered after the U.S. Patent and Trademark Office approved Mullin's trademark application for "Breathe Right".  (Ex. F, APP 068.)  Petmate decided to market the "Breathe Right" trademark as a sub-brand of its popular Chuckit!® brand, while producing the products using its existing IP and manufacturing processes developed for its JW Holee Roller brand.  Petmate made these intentions clear to Mullin in May 2015 (Ex. F, APP 068):

| | |
|---|---|
| Message | |
| From: | Chris A. Wilson [cawilson@petmate.com] |
| Sent: | 5/19/2015 9:15:02 AM |
| To: | Keith Mullin [km@makeideas.com]; Ryan Wills [rwills@petmate.com] |
| CC: | Jack Renforth [jrenforth@petmate.com]; 'Loren' [loren@tayloredconcepts.net]; MMurphy@giplaw.com |
| Subject: | RE: Official USPTO Notice of Allowance: U.S. Trademark SN 86420950: BREATHE RIGHT BALL |

Hi Keith,
We are open to a licensing deal for the TM'd name Breathe Right Ball.  The construction of the ball, "one-piece skeletal structure with multiple openings consisting of more than 2 openings," is covered by Petmate's JW Hole Roller patent.  But your marketing/naming spin on the patented construction is interesting.  We would need you to verify that dogs do indeed breath through their mouth while carrying a ball giving credence to the breathe right claim.  If you can substantiate that claim we would be open to a small royalty for the naming/marketing idea.

Please let me know your thoughts on that concept.

Thank you.  Chris.

The Term of the License Agreement ran from January 1, 2016 to December 31, 2020.  (Ex. A, APP 001, 004.)  During the Term, Petmate independently designed several products that were branded as "Breathe Right".  The first "Breathe Right" branded product was a ball, shown below

next to two of Petmate's preexisting JW Holee Roller balls.





Preexisting JW Holee Roller Balls (Exs. B, C, E)          Breathe Right Ball

As can be seen above, Petmate altered the JW Holee Roller balls by redesigning the latticework (i.e., the shape/orientation of the holes). Petmate's design was based on the latticework design used in its preexisting Chuckit! lacrosse launchers. The latticework was intended to look organic, like netting, similar to the lacrosse design as shown below:





Chuckit! Lacrosse Launcher                          Ball Latticework

The organic latticework was also inspired by and designed consistent with the baseball seam look of other preexisting balls sold by Petmate under the Chuckit! brand:







Breathe Right          Chuckit! Ultra Squeaker          Chuckit! Ultra
                       (preexisting) (Ex G, APP 076)    (preexisting) (Ex G, APP 075)

Petmate also expanded the line with several other products marketed under the "Breath

Right" brand—a football, a stick, a bumper and a wheel, all with holes (see below).  Under the License Agreement, Petmate paid Mullin a 2% royalty on sales of all of these products for use of the "Breathe Right" name.  Mullin praised Petmate's work on these products prior to termination of the License Agreement.  (Ex. H, APP 088.)



Product Extensions

Near the end of the License Agreement's Term in December 2020, Mullin wanted more money to extend.  (Ex H, APP 088.)  When Petmate said it would renew the License Agreement but under the same terms, Mullin threatened and antagonized Petmate hoping that his tactics would improve his bargaining position.  (*See* Exs. I-L at APP 090, 092, 112, 117.)  Mullin made baseless claims to ownership of Petmate's IP, including IP predating and outside the scope of the License Agreement.  (Exs. M, N at APP 120, 126.)  Mullin accused Petmate of fraud and threatened to harm Petmate by contacting Petmate's customers and government agencies including the American Pet Products Association, the U.S. Department of Customs and Border Protection, the U.S. Department of State, Office of Intellectual Property Enforcement, the U.S. Consulate General, China, the U.S. Patent and Trademark Office, the U.S. Security and Exchange Commission and the Federal Trade Commission, National Advertising Review Board.  (*See* Exs. I-L at APP 090, 092, 112, 117.)  Mullin also demanded a $50,000 cash payment—a ransom to withdraw his threats. (Ex. J at APP 107, #4.)

Because of Mullin's behavior, Petmate eventually decided not to renew the License Agreement and to rebrand its products as "Chuckit! Air".  Petmate filed this lawsuit to stop Mullin from harassing its business partners and confirm that Mullin has no rights to Petmate's intellectual

property.

## IV.    LEGAL STANDARD

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Fina Oil & Chem Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed. Cir. 1997).  A genuine dispute is one that can be resolved only by a trier of fact because it may be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A material fact is one that can affect the outcome of the suit under the governing substantive law.  *Id.* at 248.  Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

If the moving party meets its burden, the nonmovant must set forth facts sufficient to demonstrate that there is a genuine issue of fact for trial.  *See Anderson*, 477 U.S. at 250.  The court should grant summary judgment unless the nonmovant comes forward with probative evidence that would demonstrate the existence of a triable issue of fact on at least one element of the claim.  *In re Bressman*, 327 F.3d 229, 238 (Fed. Cir. 2003).

## V.    PETMATE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

### A.    Petmate Owns its Trademarks (Petmate Count 2 & Mullin Count 5)

Petmate's Count 2 and Mullin's Count 5 request declaratory judgment regarding the ownership of six trademark applications filed by Petmate during the Term of the License Agreement.  (See ECF Dckt. Nos. 1 at page 8, 20 at page 21.)

1. U.S. Trademark Reg. No. 5,351,758 for "Run Farther, Fetch Longer";
2. U.S. Trademark App. Serial No. 90521385 for "Fetch Hard, Breathe Easy";
3. U.S. Trademark App. Serial No. 90521344 for "Chuckit! Air";
4. U.S. Trademark App. Serial No. 90327551 for "Breathe It";
5. U.S. Trademark App. Serial No. 90327546 for "Breathe Easy"; and
6. U.S. Trademark App. Serial No. 90327534 for "Chuckit! Breathe".

Pursuant to Section 4.1 of the License Agreement, Petmate owns any brands it selects to identify products sold under the License Agreement, *other than* marks with the words "Breathe" *and* "Right." (Ex. A, ¶4.1, APP 003.) Not one of the above trademarks uses the words "Breathe" **and** "Right". "Chuckit! Air" uses neither word and includes Petmate's well-known Chuckit!® name.

Summary judgement should be granted in Petmate's favor since the License Agreement clearly and unambiguously states that Petmate owns any trademarks without both of the words "Breathe" *and* "Right".

**B.     Mullin Is Not A Joint Inventor of Petmate's Patents (Petmate Count 5 & Mullin Count 4)**

Petmate's Count 5 and Mullin's Count 4 request declaratory judgment regarding inventorship of three design patents that illustrate products that Petmate created for the "Breathe Right" sub-brand. (*See* ECF Dckt. Nos. 1 at page 10, 20 at page 20.) Mullin claims that he is a joint inventor of the design patents even though he admittedly was not involved in creating the designs and never collaborated with the designers.

Inventorship is a question of law. *Natron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009). Patent issuance creates a presumption that the named inventors are the true and only inventors. *Caterpillar Inc. v. Sturman Industries, Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004). To rebut this presumption, a district court must find *clear and convincing evidence* that the alleged unnamed inventor made a significant contribution to the claimed subject matter. *Id.* Summary judgment may properly be granted if the alleged coinventor cannot prove their contribution with more than their own testimony. *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004).

In this case, Petmate filed design patents for each of the four product extensions it developed for the "Breath Right" sub-brand (the football, stick, wheel, and bumper). Mullin is not listed as an inventor on any of these patents. Even so, Mullin asserts that he should be named as a joint inventor of three of those design patents: (1) U.S. Patent Nos. D869,105 ("the D'105 Patent"—Stick), (2) US D870,986 ("the D'986 Patent"—Football), and (3) US D930,289 ("the D'289 Patent—Wheel). (See Exs. O-Q. APP 132, 142, 148.) Mullin admits that he is not an inventor of the fourth design patent: U.S. Design Patent No. D930,288 ("the D'288 Patent"— Bumper). (*See*, Ex. R at APP 156; Ex. S at APP 173-174, 138:22-139:4). The chart below shows representative design patent drawings and the named inventors.

| Patent | Patent Image | Named Inventor(s) | Mullin Claims Joint Inventorship? |
|---|---|---|---|
| D'105 Patent (Ex. P, APP 142) | FIG. 1 | Zeng Yi Bao (CN), Tian Le Yang (CN) | **YES** |
| D'986 Patent (Ex. O, APP 132) | | Josiah Wilhelm (US), Vung Nguyen (VN) | **YES** |
| D'289 Patent (Ex. Q. APP 148) | FIG. 1 | Josiah Wilhelm (US) | **YES** |

| D'288 Patent (Ex. R, APP 156) | Fig. 1 | Josiah Wilhelm (US) | **NO** |
|---|---|---|---|

As listed on the face of the patent, the football was designed by Petmate employees Josiah Wilhelm and Vung Nguyen.  (Ex. O, APP 132.)  The wheel and bumper were also designed by Josiah Wilhelm.  (Exs. Q, R, APP 148, 156.)  The stick was designed by third parties Zeng Yi Bao and Tian Le Yang.  (Ex. P, APP 142.)  The stick's latticework is different from the organic netting design of the other products because the stick was designed by a third-party supplier who presented it to Petmate at the 2017 China International Patent Show.  (Ex. T, APP 180-181, row 7.)

A design patent has a very narrow scope.  *See Hartco Engineering, Inc. v. Wang's Intern, Inc.*, 142 Fed. Appx 455, 458 (Fed. Cir. 2005) ("Design patent protection is very narrow, covering only what is shown in the drawings in the patent.").  The novelty of the above design patents lies in the shape and orientation of the holes.  If he was a joint inventor, Mullin would have collaborated with the named inventors of the design patents regarding these novel features.  *See Vanderbilt University v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010) ("The interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception.")

Mullin never collaborated with the inventors of the above design patents.  He never met with or spoke to the inventors.  (Ex. S at APP 164-165 [117:15-118:1], APP 170 [129:13-21], APP 175-176 [145:6-16; 146:2-8].)  He never traveled to Petmate to discuss the designs.  (Ex. S at APP 163 [99:1-16], APP 169 [126:10-12], APP 177 [152:13-18].)  He never even saw the designs until Petmate had finished them.  (Ex. S at APP 166-167 [120:4-121:18], APP 172 [132:2-8], APP 176 [146:9-22], APP 177 [152:19-23].)

During his deposition, Mullin testified that his inventorship claim was based on third-party products that he sent to Petmate via email.  Specifically, he relies on the following:

(1)   <u>D'986 Patent—Football</u>.  Mullin sent Petmate an email showing Petmate a third-party football from Tangle Sports.  (See Ex. U at APP 182-185; Ex. J at APP 104.)  Mullin alleges that seeing the third-party football inspired Petmate's own football with holes, and that being the middleman who made Petmate aware of the Tangle football makes him a joint inventor of Petmate's design.  The Tangle football is shown below next to the D'986 Patent's design.  The Tangle football does not have Petmate's unique latticework design of the D'986 Patent.

              

<u>Third Party Football</u>                          <u>D'986 Patent Design</u>

(2)   <u>D'105 Patent—Stick</u>.  The Stick has the same issue as the football.  Mullin sent Petmate an email showing a third-party stick from Hyper Pets.  (See Ex. V at APP 189; Ex. J at APP 103.)  Like with the football, Mullin believes that being the middleman who showed Petmate the Hyper stick qualifies him as an inventor of Petmate's design.  The Hyper stick is shown below next to the D'105 Patent's design.  It has none of the novel latticework design features of Petmate's design.

              

<u>Third Party Stick</u>                          <u>D'105 Patent Design</u>

(3)    <u>D'289 Patent —Wheel</u>.  The Wheel has the same issue as the football and stick. Mullin showed Petmate a picture of a Petmate frisbee with holes.  (See Ex. V at APP 190; Ex. J at APP 103.)  Mullin's frisbee mockup is shown below next to Petmate's D'289 Patent's wheel. Again, it has none of the novel latticework design features of Petmate's design.  A frisbee and a wheel may both be round, but the similarity ends there.  Additionally, Petmate already sold both frisbees and wheels under Chuckit!® and other brands.  (*See, e.g.,* Ex. W, 2013 Chuckit!® catalog at APP 191, 200, 201, 207.)


Mullin's Frisbee


D'289 Patent Design

Sending Petmate pictures of third-party products or other prior art and suggesting that Petmate make the same thing and brand it as "Breathe Right" does not make Mullin a joint inventor of Petmate's design patents.  The third-party products were publicly available prior to the filing dates of the design patents and therefore qualify as prior art.  As a matter of law, prior art cannot be the basis for a claim of joint inventorship.  *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 ("A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception.").

There is no evidence that supports the claim that Mullin is a joint inventor of the D'105, D'986 or D'289 Patents.  Petmate already sold the general shapes and independently designed the latticework and other designs with no input from Mullin.  (Ex. W at APP 191, 193, 200, 201, 204 207; Ex. B at APP 043, 048, 051-052; Ex. S at APP 166-167 [120:4-121:18], APP 172 [132:2-8], APP 176 [146:9-22], APP 177 [152:19-23].)  Mullin even praised the work <u>Petmate</u> had done.

(Ex. H at APP 088, 1st sentence.)  Mullin never met the designers of these three design patents for which he claims to be a joint inventor.  (Ex. S at APP 164-165 [117:15-118:1], APP 170 [129:13-21], APP 175-176 [145:6-16; 146:2-8].)   At best, Mullin showed someone else at Petmate a preexisting third-party product or other general prior art and suggested that they make the same thing as a "Breathe Right" branded product.  The law is clear, however, that the mere suggestion of a result is insufficient to establish joint inventorship.  *See Garrett Corp. v. U.S.*, 190 Ct. Cl. 858, 870 (1970).  This court should accordingly grant summary judgment in Petmate's favor.  *See, e.g., Netscape Communications Corp. v. ValueClick, Inc.*, 684 F.Supp.2d 699, 721 (E.D. Va. 2010) (granting patentee's motion for summary judgment dismissing allegation of incorrect inventorship because alleged inventor did no more than propose a result that should be achieved); *Levin v. Septodont, Inc.*, 34 Fed. Appx. 65, 72-73 (4th Cir. 2001) (granting summary judgment of no joint inventorship).

## C.     Under the License Agreement, Petmate is the Owner of Its Design Patents (Petmate Count 3 & Mullin Count 6)

Petmate's Count 3 and Mullin's Count 6 request declaratory judgment regarding ownership of the above-identified four design patents.  (*See* ECF Dckt. Nos. 1 at page 9, 20 at page 22.)  This claim of ownership is based on Mullin's argument that the License Agreement grants him ownership of any intellectual property associated with a product that Petmate branded as "Breathe Right"—regardless of his own contribution.

Defendants will argue that all intellectual property associated with the "Breathe Right" branded products are "improvements" upon the IP Mullin owned at the time that the License Agreement was executed.   The scope of Mullin's IP at the time is defined by the License Agreement.  (Ex. A at APP 001.)  It does not include any products that have the unique design of Petmate's products.  Balls with breathable holes were in the public domain long before Petmate

12

ever met Mullin.  (*See, e.g.,* Exs. B-E at APP 039, 055, 059, 064.)

The court need not decide what might be considered an "improvement" to Mullin's IP. The License Agreement at paragraph 9.6 is clear and unambiguous that <u>Petmate owns any independently created intellectual property</u>.  (*See* Ex. A, ¶ 9.6, APP 005) ("In the event of Termination, Petmate shall assign back to Make Ideas, all Make Ideas Intellectual Property that was assigned to Petmate, **<u>other than</u>** <u>any Brands that were selected by Petmate or</u> **<u>any intellectual property that was independently created by Petmate</u>**.")

If the court agrees that Mullin is not a joint inventor of the D'105 Patent, the D'986 Patent and the D'289 Patent for the reasons discussed above in Section B, then these designs were necessarily independently created by Petmate and without Mullin.  Accordingly, summary judgment should be granted because, as a matter of law, these patented designs are owned by Petmate under the License Agreement's paragraph 9.6.

Moreover, Mullin does not assert that he is an inventor of the D'288 Patent.  (Ex. S at APP 173-174 [138:22-139:4].)  Thus, the design set forth in the D'288 Patent was independently created without Mullin.  Accordingly, the court should rule as a matter of law that the D'288 Patent is owned by Petmate under the License Agreement's paragraph 9.6.

**D.     Under the License Agreement, Petmate is The Owner of Its Utility Patents (Petmate Count 3 & Mullin Count 6)**

Petmate's Count 3 and Mullin's Count 6 also seek a declaration of ownership of two utility patents created by Petmate that cover an updated manufacturing method designed for the JW Holee Bone of Petmate's preexisting JW Holee Roller brand.  (*See* ECF Dckt. Nos. 1 at page 9, 20 at page 22.)  The utility patents at issue are U.S. Patent Nos. 9,962,864 ("the '864 Patent") and 10,919,185 ("the '185 Patent").  (Exs. M, N at APP 120, 126.)  Notably, the '864 and '185 Patents differ from the design patents discussed above because they were filed <u>before</u> the Term of the

License Agreement began in January 2016.  (Ex. M, N at APP 120, 126: priority date of 3/3/15.)  Despite this, Mullin claims ownership of these patents to try to create leverage and improve his bargaining position for additional monetary compensation.

First, Mullin cannot own the '864 and '185 Patents under the License agreement because he admits he is not a joint inventor of either of the '864 Patent or the '185 Patent.  (Ex. S at APP 178-179[177:7-178:14].)  Thus, by definition, these patents were independently created by Petmate and are owned by Petmate under the License Agreement for the same reasons as the design patents.  Again, paragraph 9.6 of the License Agreement clearly and unambiguously provides that Petmate owns any independently created intellectual property.  (*See* Ex. A, ¶9.6, APP 005.)

Second, and perhaps more importantly, the '864 and '185 Patents have a priority filing date of March 3, 2015, which predates the Term of the License Agreement.  (Ex. M, N at APP 120, 126: priority date of 3/3/15.)  This means under the patent statute the date of conception is March 3, 2015—long before the parties ever considered making the products.  (*See* Ex. F at APP 068: May 19, 2015 email with Petmate's first offer to license the "Breathe Right" name.)  Even under the most favorable contract interpretation for Mullin, there is no interpretation of the License Agreement that could somehow transfer ownership of Petmate's preexisting IP to Mullin.

For these reasons, the court should grant summary judgment declaring that Mullin does not own the '864 and '185 Patents under the License Agreement.

### E.   Petmate Has Not Infringed Mullin's Copyrights (Mullin Count 3)

Mullin's Count 3 alleges copyright infringement, but it is essentially unintelligible.  (*See* ECF Doc. No. 20, page 19.)  Mullin's copyright claim is based on a "book" ("the Book") that was filed for copyright registration after termination of the License Agreement.  The Book is attached as Exhibit X (APP 215-217) and is a compilation of various marketing slogans that were either (1)

previously authored and used by Petmate to advertise the products branded as "Breathe Right" or (2) written by Mullin at some point which he has not made clear.

The biggest problem with addressing Mullin's copyright infringement claim is that Mullin cannot articulate what are his copyrights, and what copyrighted elements Petmate has allegedly infringed. Mullin's Counterclaim 3 is vague, and despite Petmate's efforts to understand his claim during discovery, it remains ambiguous. Below, Petmate has made its best attempt to interpret Mullin's copyright infringement claim and explain why the claim cannot succeed as a matter of law.

### 1.   If the Book is a Valid Copyright, then Petmate has Ownership Rights as a Joint Author

To qualify for copyright protection, a work must be original to the author. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991). Mullin acknowledged during his deposition that he did not author all of the slogans compiled in the Book, and that Petmate authored some as part of its marketing. (Ex. Y, APP 222-224, 249:15-251:17.) This makes Mullin and Petmate joint authors of the Book if the Book is indeed a valid copyright.

Each joint author of a copyright is a co-owner regardless of the relative extent or quality of their contributions. *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991); *Bencich v. Hoffman*, 84 F.Supp.2d 1053, 1055 (D. Ariz. 2000) ("even a person whose contribution is relatively minor, if accorded joint authorship status, enjoys all the benefits of joint authorship"). As a co-owner in the whole, each joint author may utilize the work without the other's permission and over the other's objection. *Williams v. ARC Music Corp.*, 121 F.3d 720 (9th Cir. 1997); *Diplomatic Man, Inc. v. Brown*, 2006 WL 2434933 (S.D.N.Y. 2006). Co-authors are therefore not liable to one another for infringement. *Member.com LLC v. Barber*, 2013 WL 5348546, *8 (E.D.N.Y. Sept. 23, 2013); *Willsea v. Theis*, 1999 WL 595629, *9 (S.D.N.Y. Aug. 6, 1999).

Since Mullin admits that he was not the author all of the slogans in the Book, and some came from Petmate's marketing materials, Petmate is a joint author of the allegedly copyrighted work, if it is valid (which it is not). Petmate cannot be liable for infringement as a joint author.

**2.      The License Agreement Grants Petmate Ownership of Any Copyright Created During the Term and a Perpetual License to Any Copyright Owned by Defendants**

Furthermore, based only on the language of the License Agreement, and without fully understanding Mullin's copyright infringement claim or ruling on validity, the court can grant summary judgment that Petmate is not liable for copyright infringement. Paragraph 5.1 of the License Agreement grants Petmate (1) ownership of any copyright created during the Term, and (2) a <u>perpetual</u> license to "Any copyrightable works created solely or jointly by Make Ideas". (Ex. A, ¶ 5.1, APP 003.) Specifically, the License Agreement states as follows:

<div style="border:1px solid black; padding:8px;">

<u>COPYRIGHTS</u>

5.1      Any copyrightable works created solely or jointly by Make Ideas related to the Products or any packaging, marketing materials, advertisements or promotional items associated therewith shall be owned by Petmate during the Term. Make Ideas grants to Petmate a perpetual license to use such copyrights in accordance with the terms herein. Petmate will own any copyright in materials created during the Term.

</div>

Thus, under the contract, any copyright created during the Term is owned by Petmate. Many of the slogans compiled in the Book were taken from Petmate's advertising materials created during the Term of the License Agreement. (Ex. Y at APP 222-224 [249:9-251:17].)

Additionally, even if Mullin could show that he is the sole owner of a valid copyright and authored everything outside of the Term of the License Agreement, Petmate still would not infringe that copyright because the License Agreement grants Petmate a <u>perpetual</u> license to any copyright owned by Defendants. (Ex. A, ¶ 5.1, APP 003.)

For this additional reason, the court should grant summary judgment in favor of Petmate

of no copyright infringement.

### 3.    Copyright Protection is Not Available for Individual Slogans

The copyrighted Book is a compilation of slogans.  (*See* Ex. X at APP 215-216) (list of marketing slogans on pages 2-3).  As discussed above, some of the slogans were conceived by Defendants, while others were conceived by Petmate.  (Ex. Y at APP 222-224 [249:9-251:17].)

Under 37 C.F.R. § 202.1(a), "short phrases such as names, titles, and slogans" are not copyrightable.  It follows, then, that one cannot compile a list of unprotectable slogans and then assert copyright infringement as to individual slogans from the compilation.  *See R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 686-687 (S.D. Tex. 2000).

*R. Ready Productions* involved a similar compilation of slogans.  *R. Ready Productions*, 85 F.Supp.2d at 686.  The court in that case analyzed the slogans and noted that they were individually not eligible for copyright protection as *scenes a faire* (e.g., standard retail sales slogan, factual information) or unprotectable marketing ideas.  The following chart performs the equivalent analysis for the slogans compiled in Mullin's book.

| Phrase in Book (Ex. X, APP 215-216) | Reason Unprotectable |
|---|---|
| No more gasping for air when carrying a tennis ball. | Unprotectable marketing idea<br>Merger doctrine |
| Breathe better when playing fetch to keep your endurance up. | Unprotectable marketing idea<br>Merger doctrine |
| It floats too! | *Scenes a faire*: factual information |
| Get more oxygen when running and play fetch longer. | Unprotectable marketing idea<br>Merger doctrine |
| No more constricted breathing and coughing when swimming. | Unprotectable marketing idea<br>Merger doctrine |
| No more gasping for air when carrying a ball. | Unprotectable marketing idea<br>Merger doctrine |
| With Breathe Right, your dog can fetch hard and breathe easy. | Unprotectable marketing idea<br>Merger doctrine |
| Designed to facilitate healthy air flow, Breathe Right® products feature a hollow, mesh-like design that lets air pass through the toy into your dog's mouth helping to improve stamina | *Scenes a faire*: factual information<br>Unprotectable marketing idea<br>Merger doctrine |

| | |
|---|---|
| and reduce downtime during playtime. | |
| Breathe Right high performance breathing products are great for both land or water play. | *Scenes a faire*: factual information<br>Unprotectable marketing idea<br>Merger doctrine |
| Breathe Right high-performance breathing products are designed to allow your dog to run and fetch longer during playtime. | *Scenes a faire*: factual information<br>Unprotectable marketing idea<br>Merger doctrine |
| The hollow, mesh-like design facilitates breathing and airflow into your dogs lungs while running and fetching | *Scenes a faire*: factual information<br>Unprotectable marketing idea<br>Merger doctrine |
| Great for playing near a pool or other body of water since it also floats. | *Scenes a faire*: factual information, standard retail sales slogan |
| Just breathe easy with Breathe Right products. | Unprotectable marketing idea<br>Merger doctrine |
| Run farther and fetch longer with Breathe Right. | Unprotectable marketing idea<br>Merger doctrine |
| Made from a durable material, the Breathe Right products are lightweight and easy to grab. | *Scenes a faire*: factual information, standard retail sales slogan |
| It helps to keep your dog active and healthy as it promotes exercise and activity. | *Scenes a faire*: standard retail sales slogan |
| Great for dogs that may tend to get bored easily. | *Scenes a faire*: standard retail sales slogan |
| The Breathe Right fetch ball is compatible with Breathe Right launchers. | *Scenes a faire*: factual information |
| Breathe Right products may also be used as a treat toy by utilizing the openings in the toy that allow you to place treats inside. | *Scenes a faire*: factual information |
| Available in small, medium, large, and x-large for dogs of all breeds and sizes. | *Scenes a faire*: factual information |
| Designed to facilitate healthy air flow during play. | *Scenes a faire*: factual information<br>Unprotectable marketing idea<br>Merger doctrine |
| Easy on your dog's mouth. | *Scenes a faire*: standard retail sales slogan |
| Allows for easier breathing for your dog during playtime. | Unprotectable marketing idea<br>Merger doctrine |
| Plush toys that have bite ridges and air channels that facilitate breathing and airflow into your dog's lungs while playing. | *Scenes a faire*: factual information |
| Run farther, fetch longer with the Breathe Right Duck! | Unprotectable marketing idea<br>Merger doctrine |
| The cute plush duck is designed to allow your dog to breathe easy during playtime. | Unprotectable marketing idea<br>Merger doctrine |
| The Breathe Right Squirrel helps to keep your dog active and healthy as it promotes exercise and activity. | *Scenes a faire*: standard retail sales slogan |

| Great for dogs that may tend to get bored easily. | *Scenes a faire*: standard retail sales slogan |
|---|---|

The court in *R. Ready Productions* held that the slogans were unprotectable as a matter of law based on an analysis of the slogans individually as shown above.  *R. Ready Productions*, 85 F.Supp.2d at 687.  As a matter of law, the slogans compiled in the Book are not eligible for copyright protection.  The court may accordingly grant summary judgment in Petmate's favor.  *Id.* at 696.

### 4.    Copyright Protection is Not Available for Methods of Use

Defendants also contend that Petmate has committed copyright infringement by infringing the "Breathe Right Method of Use", which is listed on page 3 of Exhibit X (APP 217.)  It is unclear what is the "Breathe Right Method of Use", but it doesn't matter because as a matter of law it is not protectable in copyright.  The "Breathe Right Method of Use" on page 3 is followed by a citation to Mullin's U.S. Patent Application No. 62/280,810.  (Ex. X, second half of page 3, APP 217.)  U.S. Patent Application No. 62/280,810 did not result in any method claims.  Mullin's argument is a veiled patent infringement claim, for a method claim that was not issued.

Section 102(b) of the 1976 Copyright Act reads:

In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

(*See also*, 37 C.F.R. § 202.1(b), prohibiting copyright of "Ideas, plans, methods, systems, or devices, as distinguished from the particular manner in which they are expressed or described in a writing;".)

The role of Section 102(b) in creating the proper balance between the copyright and patent systems originated with the Supreme Court's decision in *Baker v. Selden,* 101 U.S. 99 (1879)*. In*

*that case,* Selden asserted that the copyright in his book gave him the exclusive right to the method of use of the double-entry system of bookkeeping explained and illustrated therein. *Baker*, 101 U.S. at 100. The Supreme Court rejected this claim: "To give the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright." *Id.* at 102.

The "Breathe Right Method of Use" suffers the same problem discussed in *Baker*. This "Method" (vague as it is) cannot be protected by copyright. Methods of use are only protectable by patents. This is a clear-cut case, particularly since the title "Breathe Right Method of Use" in the copyright is followed by a citation <u>to a patent application</u> filed by Mullin. (Ex X at APP 217, citing U.S. Provisional Patent Application No. 62/280,180.)

The court may accordingly rule as a matter of law that the "Breathe Right Method of Use" is not protectable by copyright.

**F.      Petmate Has Not Breached the License Agreement for Selling Product Extensions (Mullin Count 1)**

Mullin's Count 1 alleges that Petmate has breached the License Agreement by selling "unlicensed" products. (*See* ECF Doc. No. 20, page 14, ¶7(b).) The products that Mullin asserts are "unlicensed" are the four product extensions illustrated above at Section III (football, wheel, bumper, stick).

Mullin asserts that the product extensions are "unlicensed" because "football", "wheel", "bumper" and "stick" are not explicitly listed in the License Agreement schedule. (Ex. Y, APP 219-220 [195:16-196:9].) But Mullin welcomed the product extensions for years and accepted royalty payments for their sale. (Ex. Y, APP 220-221 [196:10-197:1].) Mullin even praised Petmate for the job it did with these extensions. (Ex. H at APP 088.) Mullin never objected to the

royalty payments or offered to return any money to Petmate.  (*Id.*)

The court may accordingly rule as a matter of law that Mullin has waived his claim that Petmate breached the contract by selling "unlicensed" products because he knew about all of the products and willingly accepted royalties for them during the Term of the License Agreement.  *See Motor Vehicle Bd. Of Tex. Dept. of Transp. v. El Paso Independent Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 110-111 (Tex. 1999) (waiver is a question of law when the facts and circumstances are admitted or clearly established).

## G.     Defendants are Not Entitled to Patent Damages

Mullin's Count 6 requests that the court issue a declaratory judgment that he is the rightful owners of certain patents.  (*See* ECF Doc. No. 20, page 14, ¶7(b).)  But in his damages report, Mullin's damages expert David Drews includes patent infringement damages against Petmate. (Ex. Z, APP 238-239.)

The Court should grant summary judgment for any claim of patent damages because Mullin has not pleaded a basis for patent infringement damages.  Mullin has not asserted that Petmate has infringed a patent.   The patent counts in the lawsuit are instead only about ownership. Underscoring that patent damages are not truly at issue in this case, Mr. Drews did not even attempt to analyze the *Georgia Pacific* factors.  *See, e.g., Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (expert did not tie the relevant *Georgia Pacific* factors to reasonable royalty).

Accordingly, summary judgment should be granted that, as a matter of law, Mullin has not made a claim for patent infringement and is not entitled to damages for infringement.

## VI.     CONCLUSION

Based on the summary judgment evidence, Petmate is entitled to partial summary judgment

declaring that:

1. Petmate is the owner of U.S. Trademark Nos. 5,351,758, 90521385, 90521344, 90327551, 90327546 and 90327534;

2. Mullin is not a joint inventor of U.S. Patent Nos. D869,105, D870,986 and D930,289;

3. Petmate is the owner of U.S. Design Patent Nos. D869,105, D870,986, D930,289 and D930,288;

4. Petmate is the owner of U.S. Patent Nos. 9,962,864 and 10,919,185;

5. Petmate does not infringe Mullin's copyright;

6. Mullin is precluded from claiming that Petmate sold unlicensed products because he accepted license payments for years based on the sale of those products; and

7. Mullin has not pleaded a claim for patent infringement, and therefore, is not entitled to damages for patent infringement.

Dated: October 10, 2022                    Respectfully submitted,

                                           */s/ Matthew C. Acosta*
                                           Matthew C. Acosta
                                           Texas Bar No. 24062577
                                           macosta@pcrfirm.com
                                           **PLATT CHEEMA RICHMOND PLLC**
                                           1201 N. Riverfront Blvd., Suite 150
                                           Dallas, Texas 75207
                                           214.559.2700 Main
                                           214.559.4390 Fax

                                           OF COUNSEL:
                                           Michael T. Murphy
                                           *Pro Hac Vice* (SBN. 386156)
                                           MMurphy@giplaw.com
                                           Joseph F. Arand
                                           *Pro Hac Vice* (SBN. 6294836)
                                           JArand@giplaw.com
                                           **GLOBAL IP COUNSELORS, LLP**
                                           1233 Twentieth Street, NW, Suite 600
                                           Washington, DC 20036
                                           202.293.0444 Main
                                           202.293.0445 Fax

                                           **COUNSEL FOR PLAINTIFF**


                       **CERTIFICATE OF SERVICE**

       The undersigned counsel for Plaintiff hereby certifies that a copy of the foregoing
document was served on counsel of record on October 10, 2022 by the Court's ECF system.

                                           */s/ Matthew C. Acosta*
                                           Matthew C. Acosta