IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOSKOCIL MANUFACTURING COMPANY, INC. d/b/a PETMATE, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:21-cv-01098-B |
| MAKE IDEAS, LLC and KEITH MULLIN, | § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PARTIAL MOTION FOR SUMMARY JUDGMENT**

0

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1
II. PETMATE IS ENTITLED TO PARTIAL SUMMARY JUDGEMENT ..................... 1
   A. Petmate Owns its Trademarks (Petmate Count 2 & Mullin Count 5) ...................... 2
      1. Defendants' "Brand" vs. "Mark" Argument is Wrong and Irrelevant ........................ 2
      2. Out of Context Citations Do Not Defeat Summary Judgment ..................................... 3
   B. Mullin is Not a Joint Inventor of Petmate's Patents (Petmate Count 5 & Mullin Count 4) ............................................................................................................. 4
      1. Defendants' Argument Supports the Court Dismissing Mullin's Inventorship Counts on Summary Judgment ............................................................................................. 5
      2. The License Agreement Cannot Determine Joint Inventorship ................................... 6
      3. Meetings With Other Petmate Employees Do Not Constitute Collaboration with the Inventors ........................................................................................................... 6
   C. Under the License Agreement, Petmate is the Owner of Its Design Patents (Petmate Count 3 & Mullin Count 6) ............................................................................. 7
   D. Under the License Agreement, Petmate is the Owner of Its Utility Patents (Petmate Count 3 & Mullin Count 6) ............................................................................. 9
   E. Petmate Has Not Infringed Mullin's Copyright (Mullin Count 3) .......................... 10
      1. Defendant's Acknowledgement that Petmate is a Joint Author of the Copyright is Dispositive ........................................................................................................ 10
      2. Defendants Ignore that Slogans are Not Copyrightable ........................................... 11
      3. Defendants' Do Not Dispute that the "Breathe Right Method of Use" is Not Copyrightable ................................................................................................... 12
   F. Petmate Has Not Breached the License Agreement for Selling Product Extensions (Mullin Count 1) ............................................................................................. 13
   G. Defendants are Not Entitled to Patent Damages ..................................................... 14
III. CONCLUSION ...................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Arica Institute, Inc. v. Palmer*,
970 F.2d 1067 (2d Cir. 1992) ................................................................................................. 11

*Eli Lilly and Co. v. Aradigm Corp.*,
376 F.3d 1352 (Fed. Cir. 2004) ................................................................................................ 7

*Engineering Dynamics, Inc. v. Structural Software, Inc.*,
26 F.3d 1335 (5th Cir. 1994) .................................................................................................. 11

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
499 U.S. 340 (1991) ................................................................................................................ 11

*Fiess v. State Farm Lloyds*,
202 S.W.3d 744 (Tex. 2006) .................................................................................................... 4

*Garrett Corp. v. U.S.*,
190 Ct. Cl. 858 (1970) .............................................................................................................. 7

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
12 F.3d 527 (5th Cir. 1994) .................................................................................................... 12

*Norma Ribbon Trimming, Inc. v. Little*,
51 F.3d 45 (5th Cir. 1995) ...................................................................................................... 11

*R.Ready Productions v. Cantrell*,
85 F.Supp.2d 672 (S.D. Tex. 2000) ........................................................................................ 11

*Trovan Ltd. v. Sokymat S.A. Irori*,
299 F.3d 1292 (Fed. Cir. 2002) ................................................................................................ 5

*Vanderbilt University v. ICOS Corp.*,
601 F.3d 1297 (Fed. Cir. 2010) ............................................................................................ 6, 7

**Statutes**

37 C.F.R. §202.1 ........................................................................................................................ 13

37 C.F.R. §202.1(a) ................................................................................................................... 12

1

**TO THE HONORABLE COURT:**

Plaintiff Doskocil Manufacturing Company, Inc. d/b/a/ Petmate ("Petmate") replies to Defendants' Response (ECF Docs. 60, 61) to Plaintiff's Partial Motion for Summary Judgment (ECF Docs. 50, 51).

## I.     INTRODUCTION

Even taking everything Defendants say as true, no issue of material fact precludes summary judgment on the seven issues raised in Plaintiff's Motion.

Defendants' arguments are immaterial to the issues raised in Plaintiff's Motion and serve only to confuse the record. For instance, it is irrelevant that Defendant Mullin (i) in 2008 purports to have designed his own toy balls with holes; (ii) filed his own patent applications; or (iii) sent Petmate various proposals which were denied. The relevant facts are undisputed:

(1) Balls with holes were in the public domain long before Petmate met Mullin.
(*See, e.g.,* Petmate's preexisting products from 2001-2003 at ECF Doc. 51, p. 3.)

(2) Mullin did not collaborate with the Petmate inventors who created the specific product designs at issue in this case (i.e., the balls with holes that Petmate branded as "Breathe Right" under the License Agreement). Mullin never met or spoke with the inventors and was not involved in the design process.
(*See, e.g.,* ECF Doc. 52-19, Ex. S at APP 164-165 [117:15-118:1, APP 170 [129:13-21], APP 175-176 [145:6-16; 146:2-8].)

(3) Mullin did not even see the Petmate's branded "Breathe Right" products until after they were finished.
(ECF Doc. 52-19, Ex. S at APP 166-167 [120:4-121:18], APP 172 [132:2-8], APP 176 [146:9-22], APP 177 [152:19-23]).

The remainder of Defendants' proffered evidence is a sideshow intended to make the issues in this case seem more complicated than they really are.

## II.     PETMATE IS ENTITLED TO PARTIAL SUMMARY JUDGEMENT

Petmate' Motion requests partial summary judgment on seven specific issues. For ease of reference, Sections A-F below correspond respectively to the seven issues discussed at Sections

1

V.A-F of Petmate's Motion (ECF Doc. 51, beginning at page 6).

### A.    Petmate Owns its Trademarks (Petmate Count 2 & Mullin Count 5)

Section V.A of Petmate's Brief requests summary judgment that Petmate owns its six trademarks because the License Agreement at Section 4.1 clearly and unambiguously grants Petmate ownership of any brands *other than* marks with the words "Breathe" and "Right". (ECF Doc. 51, pp. 6-7.)  Section 4.1 states as follows:

> **TRADEMARKS**
>
> 4.1   Make Ideas grants to Petmate during the Term an exclusive license to use the marks included in the Make Ideas Intellectual Property, including (without limitation) the names BREATHE RIGHT BALL or any variations thereof, for the Products alone or with other names, and any associated logos, e.g., on packaging, sell sheets, etc. Petmate is under no obligation to use the mark BREATHE RIGHT BALL and may brand the Products in its sole discretion. Petmate shall own any brands it may select to identify the Licensed Products other than marks with the words BREATHE and RIGHT.

(ECF Doc 52-1, Ex. A, APP 003.)

It is undisputed that the six trademarks at issue do not include the words "Breathe" and "Right".  (*Id.*)  None of Defendants' arguments change this basic fact.

#### 1.    Defendants' "Brand" vs. "Mark" Argument is Wrong and Irrelevant

Defendants try to avoid the unambiguous language of Section 4.1 by arguing that a "brand" is different from a "mark".  (ECF. Doc. 61, p. 7.)  However, when read in full, Section 4.1 says "Petmate shall own any **brands** it may select to identify the Licensed Products *other than* **marks** with the words BREATHE and RIGHT."  (ECF Doc. 52-1, Ex. A, APP 003.)  The heading of Section 4.1 is "TRADEMARKS".  The section covers trademarks and brands.  The whole of Section 4.1 clearly equates brands and marks—and says Petmate owns all except **marks** with the words "Breathe" and "Right".

Defendants contend that a brand is broader than a mark (ECF. Doc. 61, p. 8, first sentence), which if true actually *supports* Petmate's position—if Petmate owns all "brands", and "marks" are a narrower subset of "brands" as Defendants argue, then Petmate's ownership of "brands" includes "marks" consistent with what Section 4.1 says.

The License Agreement unambiguously states that Petmate owns all brands or marks except **marks** with the words "Breathe" and "Right". The court may determine the objective intent of the parties as a matter of law and grant summary judgment. The License Agreement also has an Entire Agreement clause (par 14.5) that prevents modification using extrinsic definitions.

2. **Out of Context Citations Do Not Defeat Summary Judgment**

Defendants warp other portions of the License Agreement to claim that it grants them ownership of marks *without* "Breathe" and "Right"—contrary to the plain language of Section 4.1.[1] (ECF. Doc. 61, pp. 8-9.)

Defendants cite to Section 4.1 while reading out the ownership provision that says "Petmate shall own any brands it may select to identify the Licensed Products other than marks with the words BREATHE and RIGHT." (C*f.* ECF Doc. 52-1, Ex. A, APP 003 vs. partial block citation provided by Defendants at page 8 of ECF Doc. 61.) Defendants cannot manufacture ambiguity in the otherwise unambiguous "TRADEMARKS" Section by removing the sentence of

---

[1] Defendants accuse Petmate of solely drafting the License Agreement so that it should be interpreted against Petmate. (ECF Doc. 61 at 9, 23.) This is false. There is no ambiguity and both parties drafted the License Agreement. (*See, e.g.,* attached Ex. AA, APP 242.) Further, Mullin is in the licensing business and has negotiated many license agreements. (*See, e.g.,* attached Ex. BB, APP 245-48 [13:10-16:23].) The evidence demonstrates that Mullin is a sophisticated businessman—not an unsuspecting victim of corporate chicanery as he now claims.

3

primary consequence. The provision must be read as a whole.[2] *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 n. 29 (Tex. 2006) (must read in view of surrounding context).

### B. Mullin is Not a Joint Inventor of Petmate's Patents (Petmate Count 5 & Mullin Count 4)

Section V.B of Petmate's Motion requests summary judgment that Mullin is not a joint inventor of three design patents (U.S. Patent No. D'869,105, D'870,986, D'930,289) because he did not collaborate with the named inventors as required by law. (ECF Doc. No. 51, pp. 7-12.) Summary judgment should be granted because Defendants' Response provides no evidence of such a collaboration.

The inventorship issue is simple. Mullin claims to be a ***joint inventor*** of three of Petmate's design patents (i.e., that the inventors should be him plus the currently named inventors). Joint inventorship requires collaboration between the joint inventors to arrive at a joint conception. *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010) ("The interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception."). Defendants cannot meet this required element because Mullin never even met or spoke to the inventors, let alone collaborated on the designs shown in the design patents. (ECF Doc. 52-19, Ex. S at APP 164-165 [117:15-118:1, APP 170 [129:13-21], APP 175-176 [145:6-16; 146:2-8].)

---

[2] Defendants also propose a similar argument using a snippet from the "PATENTS" Section at 3.1 of the License Agreement. This section acknowledges that Mullin filed his own independent provisional patent application (62/280,810—directed to a dual core ball not used by Petmate) and retained possession of IP arising from that separate invention. This snippet cannot be divorced from the rest of "PATENTS" §3.1 and used to somehow override the clear statement at "TRADEMARKS" §4.1 granting Petmate ownership of any brands **other than** marks with the words "Breathe" and "Right". *Fiess*, 202 S.W.3d at 750 n. 29. Defendants also have not demonstrated how or why Petmate's six trademarks would arise from Mullin's separate provisional application (62/280,810).

4

Defendants' Response does not come forward with any facts that would allow the finder of fact to conclude that Mullin collaborated with the inventors. Mullin's independent development of balls with hole designs is irrelevant to the inventorship of Petmate's patents. (*See* ECF Doc. 61 at 12-21.) Mullin's own patent filings are irrelevant to the inventorship of Petmate's patents.[3] (*Id.*) Mullin's disclosure of his own, or other third parties', designs to Petmate's **non**-inventor employees is irrelevant to the inventorship of Petmate's patents. (*Id.*) It also immaterial that Defendants claim similarities between preexisting designs and Petmate's patented designs using language such as "prolate spheroid shape" or "perforated cutouts". (*See, e.g.,* ECF Doc. 61, p. 13, 16-17, 20.)

None of Defendants' proffered evidence changes the undisputed fact that Mullin did not collaborate with the inventors and that judgment must be entered as a matter of law.

**1.    Defendants' Argument Supports the Court Dismissing Mullin's Inventorship Counts on Summary Judgment**

Defendants argue that the court cannot dismiss the inventorship counts because there has not been claim construction of those patents. (ECF. Doc. 61, p. 10.) They are half right. It is true that claim construction is needed by a party seeking to *add* a joint inventor to a patent. *See, e.g., Trovan Ltd. v. Sokymat S.A. Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002). But here, Defendants are the party *challenging* the inventorship of the subject patents and seeking to add Mullin as an inventor. Thus, Defendants bear the burden of proving inventorship by clear and convincing

---

[3] Throughout their Response, Defendants repeatedly cite to U.S. Provisional Patent Application No. 61/949,243 (Exhibit 4). (ECF Doc. 61, pp. 61, pp. 1, 2, 12, 14, 15, 22.) This is an expired provisional application which Mullin abandoned before the License Agreement began, and it was not even included in the License Agreement as part of the listing of Mullin's existing intellectual property that related to the License Agreement. It shows that Mullin included pictures of his own balls with holes in his own abandoned patent application, which is irrelevant to the summary judgment issues.

5

evidence. *Vanderbilt Univ.*, 601 F.3d 1297. If the failure to request claim construction is dispositive on this issue as Defendants assert, then it is fatal to ***Defendants' inventorship challenge***, not to Petmate's defense against that challenge.

Claim construction is not needed here to decide what *part* of the claim Mullin conceived because, as a matter of law, there cannot be any joint inventorship since Mullin did not collaborate with the named inventors. *See Vanderbilt University v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010). This requirement exists regardless of how the claims are construed. Nevertheless, the Court may also grant summary judgment on ***Defendants' inventorship challenge*** due to ***Defendants' failure*** to request claim construction and meet their own burden of proof.

### 2.      The License Agreement Cannot Determine Joint Inventorship

Defendants cite to Sections 2.2, 2.3 and 3.1 of the License Agreement as allegedly relevant to this issue. (ECF. Doc. 61, p. 11.) But joint inventorship is not determined by contract; it occurs *by operation of law* when inventors jointly conceive of the invention. *See Vanderbilt University*, 601 F.3d at 1303.

### 3.      Meetings With Other Petmate Employees Do Not Constitute Collaboration with the Inventors

Defendants further argue that Mullin independently conceived of ideas for balls with holes and showed his designs to various Petmate employees. (*See* ECF Doc. 61 at 12-21.) Even if his statements are true (they are not), they would not make him an inventor of the three design patents. Again, since Mullin never collaborated with *the named inventors* of the three design patents, he cannot be a ***joint inventor*** as a matter of law.[4]

---

[4] The named inventors of the design patents are Josiah Wilhelm, Vung Nguyen, Zeng Yi Bao and Tian Le Yang. (ECF Doc. 51, pp. 8-9.)

6

Even taking all of Defendants' statements as true, at best Mullin showed a ***non***-inventor at Petmate pictures of other balls with holes and suggested that Petmate make the same thing as a "Breathe Right" branded product. There are many reasons why this does not establish joint inventorship, but they all do not need to be analyzed for the court to rule on summary judgment.[5] Because Mullin did not collaborate with the inventors of Petmate's patents means that he cannot be a joint inventor as a matter of law. *See Vanderbilt University*, 601 F.3d at 1303.

C.  **Under the License Agreement, Petmate is the Owner of Its Design Patents (Petmate Count 3 & Mullin Count 6)**

Section V.C of Petmate's Brief requests summary judgment that Mullin does not own four of Petmate's design patents under the License Agreement. (ECF Doc. 51, pp. 12-13.) This is a separate issue from inventorship, but a finding of no joint inventorship also disposes of this issue.

The License Agreement at paragraph 9.6 is clear that Petmate owns any independently created intellectual property. (ECF Doc. 52-1, Ex. A, ¶ 9.6, APP 005.) There is no evidence that Mullin is an inventor of any of the patents. If the court finds that Mullin is not an inventor of the three design patents at issue in Section B (U.S. Patent No. D'869,105, D'870,986, D'930,289), then those designs were necessarily independently created by Petmate and without Mullin. Furthermore, and regardless of the ruling on Section B, Mullin does not claim to be an inventor of U.S. Patent No. D'930,288, so the court can rule on that patent even without ruling on inventorship.

As expected, Defendants claim that they own all of Petmate's design patents as "improvements" to their own IP. Defendants argue that anything made by Petmate with holes is

---

[5] Showing Petmate pictures of other balls with holes also does not make Mullin a joint inventor, for example, because the mere suggestion of a result to be achieved is insufficient to establish joint inventorship. *See Garrett Corp. v. U.S.*, 190 Ct. Cl. 858, 870 (1970). Further, prior art cannot be the basis for a claim of joint inventorship. *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).

7

an improvement to their IP, despite acknowledging that balls with holes have long been in the public domain and Petmate made balls with holes long before it met Mr. Mullin. Defendants wrongly cite to Sections 1.1 and 3.1 of the License Agreement as granting Mullin ownership of the design patents as improvements to his own patents. (ECF Doc. 61, p. 21.) Section 1.1 defines existing Make Ideas IP licensed to Petmate using what is shown in Schedule C,[6] while Section 3.1 deals with ownership regarding extensions of Mullin's personally filed U.S. Provisional Patent Application No. 62/280,180.[7]

Defendants then argue that Petmate's design patents are improvements to Mullin's own U.S. Provisional Patent Application No. 61/949,243 (Exhibit 4). (*Id.* at p. 22.). U.S. Patent Application No. 61/949,243 was an abandoned provisional application that expired before the License Agreement began and was not even identified ***by Mullin*** in the License Agreement as his own relevant intellectual property. (*See* footnote 3, *supra*.)

Defendants' arguments seek to confuse the record but do not change the material facts:

(1) If Mullin is not named as a joint inventor of U.S. Patent Nos. D'869,105, D'870,986, D'930,289, then those designs were necessarily independently created by Petmate and without Mullin; and

(2) Since Mullin acknowledges that he is not a joint inventor of U.S. Patent No. D'930,288, that design was necessarily independently created by Petmate and without Mullin.

---

[6] Section 1.1 simply defines Defendants' IP that Petmate was allowed (but not required) to use during the Term of the License Agreement. (ECF Doc. 52-1, Ex. A, APP 001.) This IP is included in the Schedule C attachment. (*Id.* at APP 011-38). At the time of the License Agreement, Mullin identified his relevant IP as (1) an existing provisional patent application (62/280,180) (*Id.* at APP 027-36) and (2) a trademark for "BREATHE RIGHT BALL" (*Id.* at APP 012).

[7] Section at 3.1 acknowledges that Mullin filed his own independent provisional patent application (62/280,810) and retained possession of all IP arising from that provisional application. (ECF Doc. 52-1, Ex. A, APP 002.) This provisional application is attached at Schedule C and is directed to a dual-core ball with holes. (*Id.* at APP 027-36.) Defendants do not even attempt to explain how any of Petmate's patents could be considered improvements on this dual-core ball with holes.

These facts conclusively warrant summary judgment on this issue. Since Mullin is not an inventor of any of the design patents, the designs were necessarily independently created by Petmate and thus owned by Petmate under Section 9.6 of the License Agreement.

**D.    Under the License Agreement, Petmate is the Owner of Its Utility Patents (Petmate Count 3 & Mullin Count 6)**

Section V.D of Petmate's Brief requests summary judgment that Mullin does not own two of Petmate's manufacturing patents (U.S. Patent Nos. 9,962,864 and 10,919,185) because (1) he is not an inventor, (2) they predate the License Agreement. (ECF Doc. No. 51, pp. 13-14.)

The first issue can be decided on summary judgement for the same reasons discussed in Section C above. Mullin admits he is not an inventor of the manufacturing patents, so the claimed manufacturing methods were necessarily independently created by Petmate and without Mullin. Section 3.1 of the License Agreement, relied upon by Defendants, and which deals with ownership of extensions of U.S. Provisional Patent Application No. 62/280,810, does not change this basic fact. (*See* footnote 7, *supra*; ECF Doc. 61 at 23.)

The second issue is also undisputable. The manufacturing patents were invented and filed by Petmate in 2015 ***before*** the License Agreement was even contemplated. (*See* ECF Doc. 51 at 14.) Defendants argue that because Mullin showed Petmate other balls with holes in 2014, that somehow the License Agreement retroactively included Petmate's prior patents. (ECF Doc. 61 at 23-24.)

It is irrelevant if Defendants showed Petmate pictures of other balls with holes in 2014. It is irrelevant that the parties' signed a CDA when they met in 2014. Defendants claim that the License Agreement itself grants them ownership of Petmate's preexisting manufacturing patents, not that Petmate stole the manufacturing methods from them in 2014 (because they know that's

9

easily disproven). There is no reading of the License Agreement that could grant Defendants retroactive ownership of Petmate's existing IP.[8]

E. **Petmate Has Not Infringed Mullin's Copyright (Mullin Count 3)**

Section V.E of Petmate's Brief requests summary judgment that Petmate cannot infringe Mullin's alleged copyright for several reasons. (ECF Doc. 51 at 14-20.) Defendants' Response does not even respond to several of the main points that decide this issue.

    1. **Defendant's Acknowledgement that Petmate is a Joint Author of the Copyright is Dispositive**

Defendants agree that Petmate is a joint author of the alleged copyright because Mullin simply copied Petmate's advertisements into his "Book" and filed it as a copyright. (ECF Doc. 61 at 26.) But Defendants basically assert that Petmate has somehow forfeited all rights as a joint author under Section 5.1 of the License Agreement. (*Id.*)

> **COPYRIGHTS**
>
> 5.1 Any copyrightable works created solely or jointly by Make Ideas related to the Products or any packaging, marketing materials, advertisements or promotional items associated therewith shall be owned by Petmate during the Term. Make Ideas grants to Petmate a perpetual license to use such copyrights in accordance with the terms herein. Petmate will own any copyright in materials created during the Term.

There is no reading of Section 5.1 that can support Defendants' argument. Section 5.1 makes clear that "Petmate will own any copyright in materials created during the Term". The

---

[8] Defendants "third" and "final" reasons are also irrelevant. (ECF Doc. 61, p. 24, last two paragraphs.) As to the "third" reason, patent families are often created through multiple related filings—what matters is the priority date of the initial filing which serves as the effective filing date. *See* MPEP §2152.01 (effective filing date is earliest of actual filing date and filing date of earliest application). As to the "final" reason, nowhere does the License Agreement say that any technology used by Petmate to manufacture products then branded as "Breathe Right" somehow becomes owned by Defendants after that. In fact, the parties had acknowledged that Petmate already owned IP which would be used to make the "Breathe Right" branded products. (*See* attached Ex. A, APP 002, ¶3.3.)

Petmate copyright was necessarily created during the Term. Petmate did not sell "Breathe Right" branded products until after the Term began, and Mullin filed the "Book" as a copyright before terminating the License Agreement. (*Cf.* ECF Doc 64-13, Ex. 13, MI_APP155 (Mullin's 5/14/21 termination letter) and ECF Doc. 52-24, Ex. X, APP 215 (Mullin's 4/10/21 copyright "Book")).

The perpetual license is an <u>additional and separate</u> reason discussed in Petmate's Brief as to why Petmate cannot be liable for copyright infringement as a matter of law. (ECF Doc. 51, p. 16.) The perpetual license sentence at Section 5.1 does not somehow change the next sentence which says "Petmate will own any copyright in materials created during the Term".

### 2. Defendants Ignore that Slogans are Not Copyrightable

Slogans are not copyrightable as a matter of law. (ECF Doc. 51, Section 3 on p. 17.) Defendants' copyright is just a compilation of slogans, many of which were pulled from advertising materials authored by Petmate. 37 C.F.R. §202.1(a) is clear that "short phrases such as names, titles, <u>and slogans</u>" are not copyrightable.

Defendants respond that *their* slogans *are* copyrightable. (ECF Doc. 61 at 27.) But their cited cases do not support this argument. *Feist* held that entries in a phone book were ***not*** copyrightable. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 363 (1991). *Norma Ribbon* held that ribbon flowers were ***not*** copyrightable. *Norma Ribbon Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir. 1995). *Arica* held that single words and short phrases were ***not*** copyrightable. *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992). *R. Ready Productions* held that slogans were ***not*** copyrightable. *R.Ready Productions v. Cantrell*, 85 F.Supp.2d 672, 686-687 (S.D. Tex. 2000). *Engineering Dynamics* dealt with a copyright in computer software. *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1337 (5th Cir. 1994). *Kepner-Tregoe* dealt with training manuals, and the accused infringer did not

dispute whether the copyright was valid. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 532 (5th Cir. 1994). *Mason* dealt with land ownership maps. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 135 (5th Cir. 1994).

Defendants have not cited a single case holding that similar slogans are copyrightable. Defendants' entire position is simply attorney argument that the slogans in their "Book" are original and thus copyrightable.[9] But 37 C.F.R. §202.1 does not say that slogans are not copyrightable unless they are original. 37 C.F.R. §202.1 just says that they are not copyrightable:

> § 202.1 Material not subject to copyright.
> The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained:
> (a) Words and short phrases such as names, titles, **and slogans**; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents;

The court may accordingly rule that the advertising slogans listed in Defendants' "Book" are not individually eligible for copyright protection.

### 3. Defendants' Do Not Dispute that the "Breathe Right Method of Use" is Not Copyrightable

Defendants' "method of use" is also not copyrightable as a matter of law and they do not dispute it. Defendants have never explained what is infringement of the "method of use". Regardless, they should not be allowed to assert at trial that the "method of use" is copyrighted since methods of use are not eligible for copyright protection.

---

[9] Petmate's chart listed multiple separate reasons why each of the slogans are not copyrightable (e.g., "unprotectable marketing idea", "factual information", "standard retail sales slogan", "merger doctrine"). (ECF Doc 51 at 17-19.) Defendants focus on the merger doctrine to distract from the fact that their slogans are not copyrightable to begin with. (ECF Doc. 61, pp. 28-29.) The merger doctrine was included in Plaintiff's chart for completeness, as an <u>additional</u> defense to copyright infringement, but full analysis of the merger doctrine is not necessary for the court to decide this issue because it does not change the underlying fact that slogans are not copyrightable.

Petmate's Brief at Section V.E.4 asked the court to rule as a matter of law that the "Breathe Right Method of Use" is not protectable by copyright. (ECF Doc. 51 at 19-20.) In the event that the court does not dismiss the copyright claim outright for the reasons mentioned above, the court should still rule as a matter of law that the "Breathe Right Method of Use" is not a protectable copyright as requested in Petmate's Brief at Section V.E.4.

### F. Petmate Has Not Breached the License Agreement for Selling Product Extensions (Mullin Count 1)

Section V.F of Petmate's Brief requests summary judgment that Petmate has not breached the License Agreement for selling product extensions. (ECF Doc. No. 51, pp. 21-22.)

Defendants' Response backtracks on this issue and claims that Petmate has misunderstood Defendants' breach of contract contention. Defendants now state that they are not asserting that Petmate's product extensions were unauthorized. This is not what Defendants have said up to this point (*see, e.g.,* ECF Doc. 52-25, Ex. Y, APP 219-221 [195:16-197:1]; ECF Doc. 52-9, Ex. I, APP 090—"Breach 2"), but Petmate is glad that Defendants now acknowledge the obvious—that the License Agreement permitted Petmate to design new products and brand them as "Breathe Right" as long as they paid Mullin a 2% royalty for use of the "Breathe Right" trademark.

Defendants' "clarification" does not moot the need for partial summary judgment on this issue. Defendants now acknowledge that they are only asserting breach of the License Agreement for sales that occurred *after* Mullin terminated the License Agreement. (*See* ECF Doc 64-13, Ex. 13, MI_APP155 (Mullin's 5/14/21 termination letter)). But the License Agreement does not govern sales *after* the Term (including a 1-year sell-off). (ECF Doc. 52-1, Ex. A, APP 002 at ¶2.1.) Petmate has not breached any contract provision by selling products after termination.[10]

---

[10] Defendants' Counterclaims at 7(b) cites to paragraph 9.6 of the License Agreement as the provision being breached by "unlicensed" sales. (*See* ECF Doc. 20 at 14, ¶7(b).) Paragraph 9.6

13

What Defendants are really arguing is that Petmate is infringing their IP *after* the Term by continuing to sell balls with holes—and that is not a *breach of contract* issue; it is an *intellectual property* issue.

In view of Defendants' clarification, the court should still rule on summary judgment that Petmate has not *breached the contract* for selling products after termination since no contract provision governs those sales.

### G.  Defendants are Not Entitled to Patent Damages

Section V.G of Petmate's Brief requests summary judgment that Defendants are not entitled to patent damages because they did not assert patent infringement. (ECF Doc. No. 51, pp. 21-22.) Defendants' Response backtracks on this issue and now acknowledges that they have no claim that permits patent damages. (ECF Doc. No. 30, p. 30, section IV.G.) Based on Defendants' acknowledgement, the court should rule on summary judgment that Defendants are not entitled to patent damages.

### III.  CONCLUSION

Petmate respectfully requests that partial summary judgment be granted in its favor for the reasons discussed in its initial Brief (ECF Doc. 51) and further discussed herein.

---

deals with the assignment of intellectual property, *not* the sale of products after termination. (ECF Doc 52-1, Ex. A, APP 005.)

Dated: November 14, 2022                    Respectfully submitted,

*/s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
**PLATT CHEEMA RICHMOND PLLC**
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

OF COUNSEL:
Michael T. Murphy
*Pro Hac Vice* (SBN. 386156)
MMurphy@giplaw.com
Joseph F. Arand
*Pro Hac Vice* (SBN. 6294836)
JArand@giplaw.com
**GLOBAL IP COUNSELORS, LLP**
1233 Twentieth Street, NW, Suite 600
Washington, DC 20036
202.293.0444 Main
202.293.0445 Fax

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that a copy of the foregoing document was served on counsel of record on November 14, 2022 by the Court's ECF system.

*/s/ Matthew C. Acosta*
Matthew C. Acosta

15